# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DARRELL BEAVEN WILSON, | : | |
| Petitioner, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-0394 |
| JOHN KERESTES, THE DISTRICT ATTORNEY OF | : | |
| BUCKS COUNTY, AND THE ATTORNEY | : | |
| GENERAL OF THE STATE OF PENNSYLVANIA, | : | |
| Respondents. | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                    November ___, 2008

Presently before the court is petitioner Darrell Beaven Wilson's pro se petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.  Wilson is currently incarcerated at the State

Correctional Institution at Mahanoy in Frackville, Pennsylvania.  After conducting a de novo

review of Magistrate Judge Jacob P. Hart's Report and Recommendation, and upon careful

consideration of Wilson's objections thereto and the parties' other submissions, I will overrule

Wilson's objections, adopt the Report and Recommendation, and deny Wilson's petition.  I will

also deny Wilson's motion for an evidentiary hearing and discovery.

## I.      Factual and Procedural Background[1]

On April 3, 2003, after a nonjury trial, the Honorable John J. Rufe of the Bucks County

Court of Common Pleas found Wilson guilty of third degree murder, aggravated assault,

---

[1] The facts in this section are substantially similar to the facts set forth in the Report and
Recommendation.  (*See* Report & Recom. 1-3.)

recklessly endangering another person, and possession of an instrument of crime.  These convictions stemmed from the June 13, 2002 shooting death of Carl Hott and shooting of Louis Gonzalez, which Wilson argued at trial occurred because he was acting in self-defense.  On August 25, 2003, Wilson was sentenced to not less than twenty and not more than forty years of imprisonment on the third degree murder conviction and not less than three and not more than six years of imprisonment on the aggravated assault conviction, to be served consecutively.

After sentencing, Wilson filed a direct appeal with the Pennsylvania Superior Court and asserted the following claims:  (1) the trial court erred in admitting evidence that he possessed a handgun and in allowing testimony that he owned a holster prior to the night of the shootings; (2) there was insufficient evidence to support the guilty verdict on the third degree murder charge because the evidence established that Wilson acted out of fear, not with malice; (3) there was insufficient evidence to support the guilty verdict on the aggravated assault charge; and (4) the trial court erred by allowing the prosecutor to state during closing arguments that Wilson had not contacted the police.  The Pennsylvania Superior Court affirmed his conviction on August 18, 2004.  The Pennsylvania Supreme Court denied Wilson's petition for the allowance of an appeal on April 18, 2005.

On December 20, 2005, Wilson filed a pro se petition under the Pennsylvania Post-Conviction Relief Act, 42 Pa. Cons. Stat. § 9541 *et seq.* ("PCRA").  In his PCRA petition he alleged that (1) the prosecutor failed to provide a sketch showing a "black toy laser pistol" for defense counsel's inspection; (2) trial counsel was ineffective for failing to adequately investigate the validity of the sketch of the crime scene that was dated June 14, 2002 that depicted a "black toy laser pistol" found near the crime scene; (3) trial counsel was ineffective for failing to

2

introduce testimony that Gonzalez was shot in the front of the leg rather than from behind; (4) trial counsel was ineffective for failing to introduce testimony of Hott's drug-induced behavior on the night of the incident; and (5) trial counsel was ineffective for failing to appeal the discretionary aspects of the third degree murder sentence.  The PCRA court appointed counsel to represent Wilson and then held an evidentiary hearing on Wilson's petition on May 15, 2006. Both Wilson and his trial counsel testified at this hearing.  On June 16, 2006, Wilson's PCRA-appointed counsel filed a no-merit letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988).  The PCRA court filed a Notice of Intent to Dismiss the PCRA petition on June 23, 2006 and ordered that the appointment of PCRA counsel be vacated on July 7, 2006.  Wilson did not respond to the Notice of Intent to Dismiss and the PCRA court then dismissed Wilson's petition on July 31, 2006.

Wilson filed an appeal to the Pennsylvania Superior Court and, in accordance with Pennsylvania Rules, later filed a Statement of Matters Complained of on Appeal.  In that document, he revised the first two issues of his PCRA petition to allege ineffective assistance of counsel for his failure to investigate the existence of a "black toy laser pistol" found near the crime scene (issue no. 1) and an allegation that the Commonwealth violated the U.S. and Pennsylvania Constitutions by failing to disclose the existence and recovery of a toy pistol near the crime scene (issue no. 5).  In response, the PCRA court filed its opinion on September 13, 2006 finding that trial counsel testified credibly as to each issue raised, his discussion with defendant regarding each, and his opinion as to the impact of each on his trial strategy.  The PCRA court found that these discussions included a joint decision by counsel and the defendant that offering testimony regarding the toy gun would be detrimental to the defense of involuntary

3

manslaughter based on an unreasonable belief in justifiable self-defense.  The PCRA court also found that trial counsel determined, with defendant's approval, defendant's best trial strategy. Counsel stated that his ballistics expert agreed with the testimony of the Commonwealth's expert and found, with the use of Gonzalez's pants, that the bullet had entered from the rear of his leg. With reference to the evidence of Hott's drug-induced behavior, trial counsel testified that he relied on the report produced by an expert in this field with whose work he was familiar.

On July 10, 2007, the Superior Court of Pennsylvania  affirmed.  The Superior Court accepted the PCRA court's finding that trial counsel testified credibly that the existence of the pistol was discussed with petitioner.  It was not black but light in color with mud and dirt covering it.  As it clearly resembled a toy gun and could not be mistaken for a real weapon, trial counsel chose not to admit the toy gun after discussion with petitioner and counsel's view that petitioner's credibility would be undermined by its admission.  The Superior Court concluded that trial counsel's strategy was not unreasonable and there was no prejudice by omitting the introduction of the toy gun.  Likewise, with reference to the claim concerning the entry wound in the leg of Gonzalez, the Superior Court noted that trial counsel hired a ballistics expert who reviewed the evidence and both he and the ballistics expert for the Commonwealth concluded that the bullet entered Gonzalez from the rear of his leg.  Trial counsel also determined that the bullet's entry point was unimportant as Gonzalez was in a panic mode as he tried to get out of the line of fire.  Again, the Superior Court concluded that there was no fault with counsel's strategy or any prejudice sustained by petitioner.  Finally, the Superior Court noted that trial counsel retained a toxicologist who prepared a report regarding Hott who concluded that the ephedrine in the victim's body was likely due to the victim having ingested cold medicine.  Trial counsel

4

found no evidence of illegal drug usage in the report and no indication that anything found in the victim's body would have caused aggressive behavior. Again, the Superior Court found no basis to assign ineffectiveness.

Wilson did not file a petition for the allowance of an appeal with the Pennsylvania Supreme Court.

Wilson filed the instant habeas petition on January 25, 2008, asserting four grounds for relief: (1) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose a black toy laser pistol found at the crime scene; (2) trial counsel was ineffective for failing to adequately investigate the existence of the black toy laser pistol; (3) trial counsel was ineffective for failing to investigate and introduce testimony that Gonzalez was shot in the leg from the front; and (4) trial counsel was ineffective for failing to introduce testimony that Hott was intoxicated the night of the incident. On February 28, 2008, I referred this case to Magistrate Judge Hart. Wilson filed a memorandum of law in support of his petition on March 31, 2008, and respondents answered the petition on April 23, 2008. On May 15, 2008, Magistrate Judge Hart issued the Report and Recommendation, which recommended denying all four of Wilson's claims. On May 23, 2008, Wilson replied to the respondents' answer and filed a motion for an evidentiary hearing or for leave to conduct discovery. Wilson filed his objections to the Report and Recommendation on June 2, 2008.

## II.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") empowers federal courts to grant habeas corpus relief to a prisoner "in custody pursuant to the judgment of a State court" if the petitioner's custody violates the Constitution, laws, or treaties of the United

States.  28 U.S.C. § 2254(a).  AEDPA entitles a petitioner habeas relief on the merits of his

petition only where the state court proceedings

>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d).  However, before a federal court can review the merits of a state prisoner's petition for

a writ of habeas corpus, the court must determine whether the petitioner has met the requirements

of the doctrines of exhaustion and procedural default.  *See* § 2254(b)(1).

When a habeas petition has been referred to a magistrate judge for a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), the district court reviews de novo "those

portions of the report or specified proposed findings or recommendations to which objection is

made."  28 U.S.C. § 636(b)(1)(C).  After conducting such a review, the district court "may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  *Id.*

Wilson objects to the entirety of Magistrate Judge Hart's Report and Recommendation.

After conducting a de novo review of the Report and Recommendation, I will overrule Wilson's

objections and approve and adopt Magistrate Judge Hart's Report and Recommendation.

## III.  Discussion

### A.  *Brady* Claim

Wilson's first claim is that the prosecutor violated *Brady* by not disclosing the existence

and recovery of a toy pistol that a police evidence voucher listed as being found at the crime

scene.[2]  When reviewing the denial of Wilson's PCRA petition, the Pennsylvania Superior Court did not address the merits of this claim because it concluded that Wilson failed to raise it on direct review and therefore waived it.

The doctrine of procedural default bars federal habeas relief when a state prisoner has defaulted on his federal claims in state court because of an independent and adequate state procedural rule.  *See Doctor v. Walters*, 96 F.3d 675, 683 (3d Cir. 1996).  "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  The doctrine of procedural default therefore ensures that state prisoners cannot evade the exhaustion requirement of 28 U.S.C. § 2254 by defaulting their federal claims in state court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

Wilson did not assert his *Brady* claim at trial or on direct appeal; he raised it for the first time in his PCRA petition.  Wilson's trial counsel testified at the PCRA hearing that prior to trial, he explained to Wilson that the gun was not black but was a muddy, bright-colored toy water gun.  (PCRA Hr'g Tr. 28:19-29:15, 30:6-30:12, May 15, 2006.)  The PCRA court found that trial counsel credibly testified that he discussed the toy gun issue with petitioner prior to trial and they jointly decided that introducing testimony concerning the toy gun would be detrimental to the defense of involuntary manslaughter based on an unreasonable belief in justifiable self-

---

[2] Although the evidence voucher listed the toy gun found near the crime scene as a black laser-type toy gun, when Wilson's trial counsel went to the police station to view this toy gun, he discovered that it was a bright-colored toy water gun.  Wilson's claim essentially asserts that there was a black toy gun found at the scene and that the prosecutor withheld this gun.

defense.  Thus, the record demonstrates that Wilson was aware prior to trial that the toy gun the prosecutor disclosed was not black.  The Superior Court accepted these findings.  Wilson therefore could have raised his *Brady* claim prior to or at trial or on direct appeal.

Under Pennsylvania law, "an issue [raised in a PCRA petition] is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."  42 Pa. Cons. Stat. § 9544(b); *see also Commonwealth v. Natividad*, 938 A.2d 310, 331 n.15 (Pa. 2007) (concluding that when a petitioner could have raised a *Brady* claim on direct appeal but raises for the first time during PCRA proceedings, the claim is waived).  Accordingly, under 42 Pa. Cons. Stat. § 9544(b), Wilson waived his Brady claim by not raising it on direct appeal.[3]  The procedural rule set forth in § 9544(b) is an independent and adequate state procedural rule.  *See, e.g.*, *Buck v. Colleran*, 115 F. App'x 526, 528 (3d Cir. Sept. 27, 2004); *Willis v. Varner*, No. 03-1692, 2004 WL 1109780, at *7 (E.D. Pa. May 13, 2004).  Wilson's *Brady* claim is procedurally defaulted because he did not comply with this rule.

---

[3] Wilson argues that he did in fact assert his *Brady* claim in the statement he filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) and that his claim is not procedurally defaulted.  A review of the state-court record, however, demonstrates that Wilson only asserted this claim in the 1925(b) statement he filed when appealing the denial of his PCRA petition; he did not assert this claim in the 1925(b) statement he filed on direct appeal.  It appears that Wilson's confusion stems from the fact that the Pennsylvania Superior Court did not specifically state that Wilson's *Brady* claim was waived because he did not raise it in the 1925(b) statement he filed on direct appeal.  Rather, when addressing Wilson's *Brady* claim the court concluded, "Appellant failed to raise this specific issue within his 1925(b) statement; accordingly, it is waived."  *Commonwealth v. Wilson*, No. 1946 EDA 2006, slip op. at 3-4 (Pa. Super. Ct. July 10, 2007).  This conclusion came after the court specifically listed Wilson's claims on PCRA appeal.  Thus, it is clear that the court was aware that Wilson had raised the *Brady* claim in the 1925(b) statement he filed on collateral review but not in the 1925(b) statement he filed on direct appeal.  The court correctly concluded Wilson waived the claim under Pennsylvania law by failing to raise it on direct appeal.

Because Wilson's *Brady* claim is procedurally defaulted, a federal court can only review his claim if he demonstrates either cause for failing to raise the claim on direct appeal and prejudice or that there will be a fundamental miscarriage of justice if the claim is not considered. *Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.")  As explained by the Supreme Court,

> "cause" under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him:  "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."

*Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Wilson has not alleged or demonstrated that an objective external factor impeded his efforts to comply with the procedural rule that required him to raise his *Brady* claim on direct appeal.  He instead argues that he properly exhausted this claim in state court and that the Pennsylvania Superior Court's conclusion was erroneous.  As discussed above, however, Wilson did not properly exhaust his *Brady* claim because he did not raise it on direct appeal, and the state court's conclusion that he waived this claim is not erroneous.[4]

---

[4] Although Wilson correctly asserts that his *Brady* claim is cognizable on PCRA review under 42 Pa. Cons. Stat. § 9543(a)(2)(i) and (vi), this is not relevant here because under § 9544(b), Wilson first had to assert the *Brady* claim on direct review, and he waived the claim because he did not raise it.  Similarly, the fact that Wilson asserted throughout the PCRA proceedings that the prosecution concealed or withheld exculpatory evidence is not relevant

The second manner in which a petitioner's procedural default can be excused—the "fundamental miscarriage of justice" exception—"will apply only in extraordinary cases, i.e., 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000) (quoting *Murray*, 477 U.S. at 496).  Actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Wilson has not alleged or demonstrated that he is actually innocent.  Because Wilson's *Brady* claim is procedurally defaulted and he has not demonstrated either cause and prejudice or a fundamental miscarriage of justice, his objections to Magistrate Judge Hart's Report and Recommendation on this claim will be overruled.[5]

**B.    Ineffective Assistance of Trial Counsel Claims**

Wilson's remaining claims are based on the ineffective assistance of trial counsel. Wilson is entitled to relief if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." *See* §

---

because he did not raise this claim on direct appeal, even though he could have done so.  Thus, contrary to Wilson's assertions, he has not demonstrated cause by the simple fact that he asserted this claim throughout the PCRA proceedings.

Wilson also argues that *Strickler v. Greene*, 527 U.S. 263 (1999), compels an outcome in his favor, but in *Strickler*, the petitioner established cause by demonstrating that he had no factual knowledge of the *Brady* claim and could not have raised the claim prior to collateral review. Here, the record demonstrates that Wilson had prior knowledge of the facts underlying his *Brady* claim and could have raised it sooner.  *Strickler* is therefore not applicable to Wilson's claim. *Banks v. Dretke*, 540 U.S. 668 (2002), is also not applicable for the same reasons.

[5] Respondents assert that because Wilson did not exhaust this claim in state court, his habeas petition is a mixed petition of exhausted and unexhausted claims that must be dismissed. However, "[a] petition containing unexhausted but procedurally barred claims in addition to exhausted claims, is not a mixed petition requiring dismissal . . . .  Although the unexhausted claims may not have been presented to the highest state court, exhaustion is not possible because the state court would find the claims procedurally defaulted." *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

2254(d)(1).  A state court decision may be "contrary to" clearly established federal law in one of two ways.  First, a state court decision is contrary to clearly established federal law where "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  Second, a state court decision will be "contrary to" clearly established federal law "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent."  *Id.* at 406.  Wilson would also be entitled to relief if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  *See* § 2254(d)(2).

The clearly established federal law applicable here is the standard for constitutionally ineffective assistance of counsel set forth by *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, to establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense.  *Id.* at 687.  To prove deficiency, a defendant must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms."  *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688).  To prove prejudice, a defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding;" rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 693-94.  Reasonable probability means "a  probability 'sufficient to

undermine confidence in the outcome.'" *Rolan v. Vaughn*, 445 F.3d 671, 683 (3d Cir. 2006)

(quoting *Hull v. Kyler*, 190 F.3d 88, 110 (3d Cir. 1999)).

The Supreme Court has explained that "[j]udicial scrutiny of counsel's performance must

be highly deferential." *Strickland*, 466 U.S. at 689.  A "court deciding an actual ineffectiveness

claim must judge the reasonableness of counsel's challenged conduct on the facts of the

particular case, viewed as of the time of counsel's conduct." *Id.* at 690.  There is "a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance," and the defendant has the burden of overcoming "the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689

(quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Wilson asserts that his trial counsel was ineffective for failing to investigate the existence

of and to admit into evidence the black toy laser pistol.  A de novo review of this claim

demonstrates that the state courts' determinations that Wilson had failed to meet either *Strickland*

prong were not an unreasonable application of *Strickland* or decisions based on an unreasonable

determination of the facts.  At the PCRA hearing, trial counsel explained:

> [O]ur defense was essentially related to Mr. Wilson suggesting that the other
> individuals were armed.  His credibility I felt was key in the case.  This toy pistol
> was, as I recall, a different color.  It was very light.  It was muddy.
>       To me, and I discussed this with [Wilson], it was absurd to admit this pistol.
> It was hideous, actually.  It was not found in the area.  It was a distance from the area.
> It was muddy, dirty.
>       You may recall that I presented a witness, Miguel Hott, who claimed that
> there had been in the vehicle a weapon at some point that night, although he recanted
> that testimony.  His description of the weapon did not match the toy pistol that was
> found.
>       And as I said, the toy pistol, just to introduce that would have, I think,
> substantially handicapped Mr. Wilson's credibility, who was essentially saying, hey,
> it was dark.  These guys came at me.  I thought they had something in their hands.

>       My defense was clearly more in line with unreasonable belief voluntary
>       manslaughter than that he had actually seen a weapon.

(PCRA Hr'g Tr. 29:4-30:5.)  The PCRA court found this testimony credible and the Superior

Court accepted this finding.  The testimony demonstrates that Wilson's trial counsel investigated

the toy gun the police found and determined that introduction of the toy gun would be contrary to

his trial strategy.  Courts are highly deferential to counsel's conduct and there is a strong

presumption that trial counsel's actions constitute sound trial strategy.  *See Strickland*, 466 U.S.

at 689.  The Pennsylvania Superior Court's decision that trial counsel's trial strategy was not

deficient was neither an unreasonable application of clearly established federal law nor an

unreasonable determination of facts.

       Furthermore, the Pennsylvania Superior Court concluded that trial counsel's conduct was

not prejudicial to Wilson's defense.  Because introduction of the toy gun may have undermined

Wilson's credibility, and because Wilson's defense did not rest on whether he actually saw a gun,

the Superior Court concluded there was no reasonable probability that the outcome of his trial

would have been different if the toy gun had been introduced.  Wilson therefore had not

demonstrated prejudice.  *See Strickland*, 466 U.S. at 694.  The state court's conclusion that

Wilson was not able to meet either *Strickland* prong is not an unreasonable application of clearly

established federal law.

       Wilson also objects to Magistrate Judge Hart's "failure" to consider the fact that the

police officers might have discovered another toy gun that was actually black and that this gun

was suppressed by the prosecution.  However, Wilson's trial counsel testified that he investigated

the toy gun that had been labeled as black and that it was actually muddy and light in color.

(PCRA Hr'g Tr. 29:8-10.)  There is nothing in the record to demonstrate that there might have been another gun, and Wilson's speculative assertion that there might have been is not sufficient to demonstrate that counsel was ineffective for failing to investigate a "black" toy gun.  *See Strickler*, 527 U.S. at 286 (addressing the "[m]ere speculation that some exculpatory material may have been withheld" and concluding that the suspicion did not "suffice to impose a duty on counsel to advance a claim for which they have no evidentiary support"); *United States v. Dawson*, 857 F.2d 923, 931 (3d Cir. 1988) (reasoning that "speculation standing alone is insufficient to challenge the conviction").  Because there is no evidence whatsoever that there were two toy guns, the Pennsylvania Superior Court's decision on this claim also was not an unreasonable determination of the facts.  Wilson's objections to Magistrate Judge Hart's Report and Recommendation on his first ineffective assistance of counsel claim will be overruled.

Wilson additionally asserts that his trial counsel was ineffective for failing to adequately investigate reports that demonstrated that Gonzales may have been shot in the front of the leg and not the rear of the leg.  Wilson specifically refers to (1) a report from the hospital where Gonzales was treated that contained a notation that Gonzales was shot from the front, and (2) a police sketch noting that Gonzales was shot from the front.  Again, a de novo review of the record shows that the state courts' conclusions that Wilson had not met either *Strickland* prong for this claim are not an unreasonable application of clearly established federal law or an unreasonable determination of the facts.

Wilson's trial counsel explained at the PCRA hearing that he gave the ballistics lab reports and the summary of those reports to an independent expert, who concluded that the bullet had entered Gonzales from the rear, not from the front.  (PCRA Hr'g Tr. 33:5-14.)  The PCRA

14

court found trial counsel's testimony to be credible.  The Superior Court accepted that finding. This expert had worked with the Pennsylvania State Police for many years and was certain of his conclusion.  Furthermore, his conclusion was consistent with the prosecution's expert's conclusion that the bullet entered Gonzales from the rear.  (*Id.* at 35:1-8, 36:5-9.)

Wilson's trial counsel also testified at the PCRA hearing that there were no medical reports that evidenced to his satisfaction that the entrance wound on Gonzales demonstrated that Gonzales had been shot from the front.  (*Id.* at 32:8-11.)  When asked about the initial hospital notation and police sketch which noted that Gonzales had been shot from the front, trial counsel testified that, "I just didn't have any strong evidence, medical evidence to suggest that the entrance wound was in the front for me to even consider, as I recall.  It appeared to me that it was all statements by Gonzales."  (*Id.* at 35:18-22.)  Trial counsel recalled that Gonzales told people at the hospital that he was shot from the front, but counsel did not put much weight on that evidence because the defense expert concluded that he was shot from behind.  (*Id.* at 34:1-8, 41:11-17.)  He also did not put much weight on the police sketch of Gonzales being shot from the front because he did not have any evidence to corroborate the sketch and because both the Commonwealth's expert and his expert concluded otherwise.  (*Id.* at 41:18-42:1.)  Trial counsel also testified that he did not think where Gonzales was shot—from the front or from behind—was "all that relevant" because Wilson's defense was that he was in fear for his life and he acted in imperfect self-defense and in a state of panic.  (*Id.* at 34:12-23.)

The state court record demonstrates that two experts looked at the ballistics reports and concluded that Gonzales was shot in the back of the leg.  Given the two experts' conclusions, the PCRA court and the Superior Court concluded that trial counsel's conduct in not further

investigating and admitting the additional evidence did not "f[a]ll below an objective standard of reasonableness under prevailing professional norms" *see Buehl*, 166 F.3d at 169, as required to demonstrate deficiency.  Moreover, in light of the two experts' conclusions, and because the evidence that Gonzales was shot from the front is not based on medical or scientific evidence, the state courts also concluded that there is not a reasonable probability that the outcome of Wilson's trial would have been different if the evidence that Gonzales was shot from the front had been further investigated and admitted at trial.  Thus, the prejudice prong had also not been met.  The Pennsylvania Superior Court's conclusion that trial counsel's strategy was reasonable and that Wilson was not prejudiced by this strategy is not an unreasonable determination of clearly established federal law.  Furthermore, because two experts' opined that Gonzales was shot from the front, the state court's decision was not an unreasonable application of the facts.  Wilson's objections to Magistrate Judge Hart's recommendation on this claim will therefore be overruled.

In Wilson's fourth claim, he asserts that trial counsel was ineffective for failing to introduce evidence that Hott's postmortem toxicology report showed he was intoxicated or on stimulants the night of the shooting.[6]  At the PCRA hearing, Wilson's trial counsel (whose testimony the PCRA court found credible) testified that the postmortem toxicology report showed traces of ephedrine in Hott's bile.  (PCRA Hr'g Tr. 36:10-16.)  He sent the report to a

---

[6] Magistrate Judge Hart again recommended denying this claim because neither prong of *Strickland* has been met.  Wilson did not specifically object to the recommendation on this claim in his objections, but he did very briefly address this claim in his motion for an evidentiary hearing, which he incorporated into his objections.  Because Wilson is proceeding pro se, I will read this as formally objecting to the recommendation on the fourth claim and will address it de novo.

16

toxicologist expert,[7] who determined that the ephedrine could have been some form of cold medicine that Hott was taking.  (*Id.* at 36:16-22.)  The amount of ephedrine in Hott's system was not large enough for the expert to conclude that it would have caused aggression or similar behavior in Hott.  (*Id.* at 36:24-37:11.)  Because of the expert's findings, trial counsel concluded that he did not have evidence that suggested Hott used illicit substances on the night in question. (*Id.* at 37:12-20.)

The PCRA court and the Superior Court concluded that trial counsel was not deficient for not introducing the toxicology report because the expert's conclusions demonstrate that it would not have been helpful to his client's defense.  Furthermore, they concluded that there was not a reasonable probability that the introduction of evidence that Hott had small traces of ephedrine in his bile—traces that Wilson's expert found were too small to cause aggressive behavior—would have changed the outcome of Wilson's trial.  Additionally, Gonzales testified at trial that he, Hott, and one of their cousins smoked marijuana earlier in the evening of the shooting, so there was already evidence that Hott had used controlled substances that night.  (*See* Trial Tr. 28:7-29:25, Mar. 31, 2003.)  Wilson therefore could not have been prejudiced by his trial counsel not further investigating and introducing the toxicology report.  The Superior Court's conclusion that neither prong of *Strickland* was met for this claim was not contrary to clearly established federal law.  Moreover, because Wilson's own expert concluded that the toxicology report would not provide evidence that the ephedrine in Hott's bile when he died was sufficient to cause erratic behavior, the state court's decision on this claim was not an unreasonable determination of the

---

[7] This expert is one trial counsel had used for many years and whom courts have recognized many times as an expert in the field of toxicology.  (PCRA Hr'g Tr. 37:20-25.)

17

facts.  I will therefore overrule Wilson's objection to Magistrate Judge Hart's recommendation on this claim.

## IV.    Wilson's Motion for Discovery and for an Evidentiary Hearing

On May 23, 2008, Wilson filed a motion seeking an evidentiary hearing on his claims, or in the alternative, leave to conduct unspecified discovery.  The decision whether to conduct an evidentiary hearing is left to the district court's discretion.  *Goldblum v. Klem*, 510 F.3d 204, 221 (3d Cir. 2007).  However, "under section 2254(e)(2), if an applicant has developed the factual basis of his claims in the state court, he is not entitled to a federal evidentiary hearing."  *Id.* at 220.  Furthermore, "the Supreme Court has made clear that 'an evidentiary hearing is not required on issues that can be resolved by reference to the state court record.'"  *Id.* (quoting *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007)).  As evidenced by the discussion above, all of the issues here can be resolved by reference to the state court record.[8]  Wilson's motion for an evidentiary hearing will therefore be denied.[9]

---

[8] Wilson specifically contends that the state court evidentiary hearing was not full or fair because there was no evidence in the state-court proceedings regarding the black toy laser gun.  However, Wilson's assertion that there may have been a second gun and that the prosecutor misled the state court when she asserted that there was only a bright-colored toy gun is not supported by anything in the record, and "bald assertions and conclusory allegations do not provide sufficient ground . . . to require an evidentiary hearing."  *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991).

[9] As the Third Circuit has noted, "even if the factual basis is not sufficiently developed, a petitioner must demonstrate that his case falls within the very limited circumstances listed in section 2254(e)(2)(A) and (B), and only then is the district court permitted under the AEDPA, though not required, to grant an evidentiary hearing."  *Goldblum*, 510 F.3d at 220-21.  The circumstances listed in § 2254(e)(2)(A) and (B) require the petitioner to demonstrate that (1) his claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or . . . a factual predicate that could not have been previously discovered through the exercise of due diligence"; and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but

18

Wilson's alternative motion for discovery will also be denied.  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Under Rule 6 of the Rules Governing § 2254 Cases, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure."  Here, Wilson is attempting to conduct discovery to determine whether the police actually recovered a black toy gun, but nothing supports that request, other than Wilson's speculative assertion that there may have been another toy gun.  "Just as bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing, . . . neither do they provide a basis for imposing upon the state the burden of responding in discovery to every habeas petitioner who chooses to seek such discovery."  *Mayberry v. Pestock*, 821 F.2d 179, 185 (3d Cir. 1987); *see also Strickler*, 527 U.S. at 286 ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."); *Zettlemoyer*, 923 F.2d at 301 ("[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery . . . .").

## V.   Conclusion

Wilson's *Brady* claim is procedurally defaulted and he has not demonstrated either cause and prejudice or that denial of this claim would result in a fundamental miscarriage of justice based on actual innocence.  Therefore, his *Brady* claim cannot be heard in this court.

_____

for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  Wilson has not demonstrated that his claims fit these limitations, so even if the state-court record had not sufficiently developed the factual bases for his claims, he still would not be entitled to an evidentiary hearing.

Additionally, the Pennsylvania Superior Court's conclusions regarding Wilson's ineffective assistance of trial counsel claims were not contrary to clearly established federal law because all of these claims fail to meet the standards set forth in *Strickland*, and the evidence in the record shows that the state court's decision was not an unreasonable determination of the facts.  I will therefore overrule Wilson's objections to Magistrate Judge Hart's Report and Recommendation, approve and adopt the Report and Recommendation, and deny Wilson's petition.

Thus, the court must determine if a certificate of appealability should issue.  A court may issue a certificate of appealability only if the defendant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires that the defendant "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The court is persuaded that reasonable jurists would not find its assessment debatable or wrong.  Therefore, Wilson has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARRELL BEAVEN WILSON,                                  :
    Petitioner,                                      :
                                                     :    CIVIL ACTION
    v.                                               :
                                                     :    NO. 08-0394
JOHN KERESTES, THE DISTRICT ATTORNEY OF                 :
BUCKS COUNTY, AND THE ATTORNEY                           :
GENERAL OF THE STATE OF PENNSYLVANIA,                    :
    Respondents.                                     :
                                                     :

## Order

And now, this _____ day of November 2008, upon careful consideration of Darrell

Beaven Wilson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1),

petitioner's memorandum of law in support thereof, the government's response, the Report and

Recommendation of United States Magistrate Judge Jacob P. Hart, petitioner's objections

thereto, and petitioner's motion for an evidentiary hearing or discovery (Doc. No. 13), IT IS

HEREBY ORDERED that:

1.        Petitioner's objections are OVERRULED.

2.        The Report and Recommendation of United States Magistrate Judge Jacob P. Hart
           is APPROVED and ADOPTED.

3.        The petition for writ of habeas corpus is DENIED.

4.        Petitioner's motion for an evidentiary hearing or discovery is DENIED.

5.        The Clerk shall CLOSE this case for statistical purposes.

6.      Petitioner having failed to make a substantial showing of the denial of a

constitutional right, there is no ground to issue a certificate of appealability.


s/William H. Yohn Jr.
William H. Yohn Jr., Judge